## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

United States of America,

                  Plaintiff,

                                        **MEMORANDUM OPINION**

v.                                    **AND ORDER**

                                        Criminal No. 14-75 ADM/JSM

Romeo Reccarro,

                  Defendant.

_____

Romeo Reccarro, pro se.
_____

# I.  INTRODUCTION

This matter is before the undersigned United States District Judge for a ruling on Defendant Romeo Reccarro's ("Reccarro") Motion for Compassionate Release from Custody [Docket No. 130] and Motion to Appoint Counsel [Docket No. 131].  Reccarro requests a compassionate release sentence reduction under 18 U.S.C. § 3582(c)(1)(A).  For the reasons set forth below, Reccarro's Motions are denied.

# II.  BACKGROUND

On March 10, 2014, Reccarro was charged by indictment with distribution, receipt, and possession of child pornography, in violation of 18 U.S.C. § 2252.  Indictment [Docket No. 1].  Reccarro initially entered a plea of not guilty, and a jury trial was scheduled.  On the morning of trial, Reccarro absconded and the jury panel was dismissed.  Min. Entry [Docket No. 47].  The Court issued a bench warrant for Reccarro's arrest on October 7, 2014.  Docket Entry [Docket No. 48].

After Reccarro was arrested on October 24, 2014, he entered a plea of guilty on November 12, 2014 to one count of receipt of child pornography.  Min. Entry [Docket No. 55];

Plea Agreement [Docket No. 56]. In the Plea Agreement, Reccarro admitted that he possessed more than 600 images of child pornography that he received through a peer-to-peer file sharing network. Plea Agreement ¶ 2. The pornographic images included videos and images of prepubescent minors, and material that portrayed sadistic or masochistic conduct or other depictions of violence. Id. Reccarro also admitted that he knowingly made the child pornography accessible to others through the peer-to-peer file sharing network. Id.

Reccarro was sentenced to a prison term of 216 months, a downward variance from the sentencing guideline of 240 months. Sentencing J. [Docket No. 99] at 5; Sentencing Hr'g Tr. [Docket No. 111] at 23:19–23:21. His appeal of his conviction and sentence was affirmed by the Eighth Circuit. See USCA Op. [Docket No. 116]. Reccarro also moved to vacate his conviction under 28 U.S.C. § 2255, alleging ineffective assistance of counsel and other claims. See Mot. Vacate [Docket No. 119]. The Court denied the § 2255 motion. See Mem. Op. Order, May 11, 2017 [Docket No. 126].

Reccarro is incarcerated at Elkton Federal Correctional Institution ("FCI-Elkton") in Lisbon, Ohio, and has served less than half of his sentence. His projected release date is February 23, 2030. See Fed. Bureau of Prisons Inmate Locator, https://www.bop.gov/inmateloc/ (last visited Feb. 8, 2021).

Reccarro now moves for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A). Reccarro, age 63, argues that he suffers from several medical issues which make him particularly vulnerable to severe illness or death were he to contract COVID-19. Reccarro states that his health issues include a history of pneumonia in 1962, 1982, and 2020, being diagnosed with asthma in 1965, being diagnosed with high blood pressure in 1990, and suffering from hand and

2

foot abnormalities related to past injuries.  See Ex. [Docket No. 130, Attach. 1] at 5.

Reccarro argues FCI-Elkton is a "hotspot" for COVID-19 and that the conditions at the facility make him susceptible to contracting the virus.  Mot. at 6.  FCI-Elkton previously experienced a COVID-19 outbreak, and reports that although 854 inmates and 56 staff members have recovered from the virus, there are currently 6 inmates and 30 staff members with active COVID-19 cases, and 9 inmates have died.  See Federal Bureau of Prisons COVID-19 Cases, https://www.bop.gov/coronavirus/ (last accessed Feb. 8, 2021).

Reccarro tested positively for COVID-19 on June 30, 2020, and has since recovered.  See Ex. at 1, 3.  He does not state that he developed any serious complications from the virus after testing positive.

Reccarro argues that his medical conditions, combined with risk of contracting COVID-19 at FCI-Elkton, constitute extraordinary and compelling reasons for his compassionate release or release to home confinement.[1]

### III.  DISCUSSION

Generally, a "court may not modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c).  One of the few exceptions to this general rule is the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A).  Under this provision, a court may reduce a term of imprisonment if, "after considering the factors set forth in section 3553(a)," the court finds that "extraordinary and compelling reasons" warrant a sentence reduction, "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission."

---

[1] Reccarro also argues that his attorney provided him with ineffective assistance of counsel.  See Mot. Ex. at 8-15.  The Court considered and rejected this claim in 2017 when ruling on Reccarro's § 2255 motion.

18 U.S.C. § 3582(c)(1)(A).

The Sentencing Commission's applicable policy statement defines "extraordinary and compelling" reasons to include serious medical conditions or cognitive impairments "that substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 comment n.1(A)(ii).  The policy statement also requires the court to determine that "[t]he defendant is not a danger to the safety of any other person or to the community" before a sentence reduction may be granted under § 3582(c)(1)(A).  U.S.S.G. § 1B1.13(2).

A defendant may not bring a motion for compassionate release until after the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Reccarro's request for a sentence reduction is denied for at least three independent reasons.  First, Reccarro has not established that he exhausted his administrative rights with the Bureau of Prisons.  Reccarro does not assert, much less show, that he requested a compassionate release motion from the warden of his institution.

Second, even if Reccarro had satisfied the exhaustion requirement, he has not shown extraordinary and compelling reasons warranting a sentence reduction.  When considering compassionate release motions in the context of the COVID-19 pandemic, courts have required an inmate to show both a "particularized susceptibility to the disease" and "a particularized risk of contracting the disease at his prison facility."  United States v. Miland, No. 16-0159 (WMW), 2020 WL 3249259, at *3 (D. Minn. June 16, 2020) (quoting United States v. Feiling, No.

4

3:19-112 (DJN), 2020 WL 1821457, at *7 (E.D. Va. Apr. 10, 2020)); accord United States v.

Ramirez, No. 17-10328-WGY, 2020 WL 2404858, at *3 (D. Mass. May 12, 2020); United States

v. Shamilov, No. 19-cr-238 (SRN), 2020 WL 2029600, at *3 (D. Minn. Apr. 28, 2020).

Reccarro has not shown a particularized susceptibility to the COVID-19 virus.  Asthma

and high blood pressure are not identified by the Centers for Disease Prevention and Control

("CDC") as risk factors for COVID-19.  The CDC guidelines state only that these health

conditions "might" pose an increased risk for severe illness from COVID-19.  See CDC,

Coronavirus Disease 2019, People with Certain Medical Conditions,

https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-condit

ions.html (last visited Feb. 8, 2021).  The other health conditions asserted by Reccarro do not

appear on the CDC's list of risk factors at all.  See id.  Reccarro's recovery after a positive

COVID-19 test last summer suggests that he may have developed some immunity to the virus,

and his lack of reported complications from COVID-19 lessens the concern that he would

develop severe complications from the virus even if he were re-infected.  See United States v.

Triplett, No. 02-40131, 2020 WL 5802120, at *4 (D. Kan. Sept. 29, 2020) ("Triplett's lack of

complications after testing positive and the possibility of developing some degree of immunity

cannot be ignored in consideration of whether there are extraordinary and compelling reasons

warranting a reduction of his sentence.").

Third, the sentencing factors in § 3553(a) weigh against reducing Reccarro's sentence.

These factors include "the nature and circumstances of the offense" and "the need for the

sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to

provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct,"

and "to protect the public from further crimes of the defendant."  18 U.S.C. § 3553(a).

With regard to the nature and circumstances of the offense, Reccarro possessed hundreds of images of child pornography, including images of pre-pubescent minors being sexually brutalized, and made the child pornography accessible to others through a peer-to-peer file sharing network.  This conduct perpetuates the exploitation of child victims who were severely abused in the production of the pornography, and also fuels the demand for child pornography. See United States v. Goldberg, 491 F.3d 668, 672 (7th Cir. 2007) ("Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded–both consumed himself and disseminated to others.  The greater the customer demand for child pornography, the more that will be produced.").  Concerning the protection of the public from further crimes, the Court is not convinced that Reccarro would remain law abiding if released.  Reccarro has a history of absconding, and he now denies responsibility for his criminal conduct by alleging that the FBI installed the images of child pornography on his computer.  See Ex. at 9–11.  He possesses factors which suggest the likelihood of re-offending is high. Releasing Reccarro under these circumstances and after he has served less than half of his sentence would undermine these sentencing considerations.

## IV.  CONCLUSION

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1.    Defendant Romeo Reccarro's Motion for Compassionate Release from Custody [Docket No. 130] is **DENIED**, and

2.      Reccarro's Motion to Appoint Counsel [Docket No. 131] is **DENIED AS MOOT**.

BY THE COURT:

_____s/Ann D. Montgomery_____
ANN D. MONTGOMERY
U.S. DISTRICT COURT

Dated:  February 8, 2021

7